**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL GIANGRIECO, | : | 3:20-cv-817 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| SUSQUEHANNA COUNTY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**<u>MEMORANDUM</u>**

**October 13, 2020**

Presently pending before the Court are two motions to dismiss in the above-captioned case, one filed by Defendants Elizabeth Arnold ("Defendant Arnold") and Judith Herschel ("Defendant Herschel") (together, the "Individual Defendants") (Doc. 19), and the other by Defendant Susquehanna County (Doc. 21) (together, the "Motions to Dismiss").  Also included with the Individual Defendants' motion is a Motion for a More Definitive Statement.  The motions have been fully briefed (Docs. 20, 22, 26–29) and are ripe for disposition.  For the reasons that follow, the Motions to Dismiss shall be granted, and the Individual Defendants' Motion for a More Definitive Statement shall be denied.

## I.    BACKGROUND

In accordance with the standard of review applicable to a motion to dismiss, the following facts are derived from Plaintiff's complaint and viewed in the light most favorable to him.

Plaintiff Michael Giangrieco is an attorney who initially served as the solicitor of Susquehanna County from 1996 to 2008.  (Doc. 1, at ¶ 10).  After a two-year stint as a Susquehanna County Commissioner, Plaintiff Giangrieco "was again asked to be the Susquehanna County solicitor" in January 2017.  (*Id.*).  The instant dispute arises from events that took place during Plaintiff's latter term as solicitor.

Defendants Arnold and Herschel are both Susquehanna County Commissioners and, according to Plaintiff, are political allies.  (*Id.*, at ¶¶ 7–8, 28).  Defendant Arnold has served as Commissioner since 2016, while Defendant Herschel was elected in November 2019 for a term that began in January 2020.  (*Id.*, at ¶¶ 7–8).

Sometime during Defendant Arnold's first term, Plaintiff "spoke to her repeatedly about actions she was taking that were not only contrary to Susquehanna [County] policy, but potentially exposed Susquehanna County to liability and did ultimately cause the county liability."  (*Id.*, at ¶ 11).  Plaintiff avers that these conversations were not part of his job duties as solicitor because another

attorney—one hired by Susquehanna County's insurance company—was handling the litigation and allegedly "had the responsibility to control [Defendant] Arnold's actions related to litigation against Susquehanna County." (*Id.*, at ¶ 12). Nevertheless, "[o]ut of an abundance of caution," Plaintiff has not detailed exactly what was spoken during these conversations with Defendant Arnold because "[s]ome of the speech involved potentially could be construed as legal advice." (*Id.*, at ¶ 13).[1]

At some point thereafter, two Susquehanna County employees sued Defendants Arnold and Susquehanna County, and these lawsuits allegedly related to those (undisclosed) actions by Defendant Arnold. (*Id.*, at ¶ 14). Plaintiff alleges that the attorney hired by Susquehanna County's insurance company subsequently asked him and others to lie in documents responsive to an EEOC complaint and likewise asked Plaintiff to change a previously drafted statement to better "protect" Defendant Arnold. (*Id.*, at ¶¶ 14–18). According to Plaintiff, his refusal to lie

---

[1] In the alternative to their motion to dismiss, the Individual Defendants move under Rule 12(e) for a more definitive statement, arguing that "Plaintiff admits [that] several aspects of his Complaint are intentionally vague due to his uncertainty of the protections of the attorney-client privilege and his prior role as solicitor for the County." (Doc. 20, at 24). However, motions under Rule 12(e) are "generally disfavored" and should be "used to provide a remedy for an unintelligible pleading rather than as a correction for a lack of detail." *Frazier v. Se. Pennsylvania Transp. Auth.*, 868 F. Supp. 757, 763 (E.D. Pa. 1994). While Plaintiff's complaint does lack detail as to specific allegations of wrongdoing, we do not find it unintelligible, and we note that the Defendants have ably responded to the complaint via their Motions to Dismiss. Accordingly, we will deny the Individual Defendants' Motion for More Definitive Statement pursuant to Rule 12(e).

"infuriated" Defendant Arnold "because he would not lie to help cover up her actions." (*Id.*, at ¶ 19).

Approximately two years later, in 2019, the Susquehanna County elections board received complaints relating to then-candidate Defendant Herschel's allegedly improper campaign finance statements. (*Id.*, at ¶¶ 20–21). Plaintiff was involved with the election board hearing concerning these complaints and allegedly made statements "about whether [Defendant] Herschel's financial statement filings were improper or what the remedy should be." (*Id.*, at ¶ 22). Plaintiff alleges that Defendant Herschel "took offense" at Plaintiff's "involvement," and that she "vowed to get even with him." (*Id.*, at ¶ 23).

During the 2019 election for Susquehanna County Commissioners, Defendant Arnold won re-election and Defendant Herschel won a seat for her first term. (*Id.*, at ¶¶ 26–27). After getting sworn in as Commissioners, one of their first official acts was a vote to "terminate" Plaintiff as Susquehanna County solicitor, which carried by a vote of 2-1. (*Id.*, at ¶¶ 33–35). Plaintiff alleges that his termination was connected to the Individual Defendants' "vow[s]" to get even with him for his prior speech, and that they had collectively "pledged" to "get rid of the testosterone in the courthouse." (*Id.*, at ¶¶ 23, 29–30). Plaintiff alleges their conduct arose to a "brazen" conspiracy to terminate his employment. (*Id.*, at ¶¶ 31–32).

Plaintiff filed his complaint on May 19, 2020, alleging four counts against all three Defendants: Count I alleges a First Amendment retaliation claim, Count II alleges unlawful discrimination and/or retaliation under the Pennsylvania Whistleblower Law, 43 P.S. § 1421 *et seq.*, Count III brings a claim for gender discrimination under the Equal Protection Clause of the Fourteenth Amendment, and Count IV alleges a state law claim for wrongful termination in violation of public policy.  (Doc. 1).  The Individual Defendants and Defendant Susquehanna County each filed Motions to Dismiss (Docs. 19 and 21), along with briefs in support (Docs. 20 and 22) on August 3, 2020.  The Individual Defendants also included a Motion for More Definitive Statement pursuant to Rule 12(e).  (Doc. 20).  Plaintiff filed briefs in opposition to the Motions to Dismiss on August 13, 2020 (Docs. 26 and 27), to which the Individual Defendants and Defendant Susquehanna County separately replied on August 26 (Docs. 28 and 29).  For the reasons that follow, we shall grant the Motions to Dismiss and deny the Motion for More Definitive Statement.

## II.     STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips v. Cty. of Allegheny*, 515

F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case."  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirement of Rule 8(a).  Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint attacked by Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To survive a motion to dismiss, a civil plaintiff must allege facts that "raise a right to relief above the speculative level…."  *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more

than "a sheer possibility." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 679. Next, the district court must identify "the 'nub' of the … complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips,* 515 F.3d at 231 (citing *Twombly*, 550 U.S. at 556-57). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

### III.   DISCUSSION[2]

### A.   Count I – First Amendment Retaliation

To state a claim for First Amendment retaliation, a plaintiff must allege two things: "(1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action."  *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006). Concerning the first prong, a public employee's speech is protected under the First Amendment "when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made."  *Id.* at 241–42 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).  "The question of whether or not speech is protected by the First Amendment constitutes a question of law."  *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 466 (3d Cir.

---

[2]     For purposes of this Memorandum, we will assume that Plaintiff was indeed terminated, and that Defendants could be liable for claims related to this termination, although it is not at all certain that is the case.  As Defendants argue, the county solicitor is appointed by the county commissioners.  16 P.S. § 901 (2018).  The commissioners meet at the start of every four-year term "for the purpose of organization," at which time they appoint county officers, including the solicitor.  16 P.S. § 502 (2018).  At the start of the 2020 term, the Individual Defendants and the third county commissioner (who is not named in this ligation) voted 2-1 to appoint a new solicitor.  (Doc. 1, at ¶¶ 34–35).  While the power of county commissioners to remove a county officer is not unlimited, a county officer is nonetheless "subject to the removal at the pleasure of the appointing power, except as otherwise expressly provided by law[.]"  16 P.S. § 450(b).  Here, because Plaintiff's complaint fails to state a claim for separate reasons, we will not consider the legitimate constitutional questions concerning removal of a county appointee raised by the Defendants.  Instead, we will assume that Plaintiff was indeed terminated from his position.

2015).  Here, the parties principally dispute whether Plaintiff was speaking "as a citizen" during the speech at issue.

A public employee does not speak "as a citizen" when the speech in question was made "pursuant to [his] official duties." *Garcetti*, 547 U.S. at 421–22.  And "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Rankin v. McPherson*, 483 U.S. 378, 384 (1987).  "Whether a public employee speaks as a citizen and whether the speech relates to a matter of public concern are often issues discussed in tandem because the two go hand in hand.  However, where a court can easily discern that the plaintiff's speech was made as part of his official duties, it is easy to hold that he did not speak as a citizen and therefore receives no First Amendment protection." *Fow v. Pawlowski*, No. 1:12-CV-1970, 2016 WL 7324514, at *6 (M.D. Pa. Dec. 16, 2016) (citing *Hill*, 455. F.3d at 242).

In the present matter, we discern three instances of speech from Plaintiff's complaint that, according to him, led to his termination: (1) Plaintiff's conversations with Defendant Arnold concerning "actions she was taking that were not only contrary to Susquehanna policy, but potentially exposed Susquehanna County to liability," (Doc. 1, at ¶ 11); (2) Plaintiff's refusal to lie in documents responsive to an EEOC complaint (*Id.*, at ¶¶ 14–19); and (3) Plaintiff's speech

during an election board hearing concerning complaints against then-candidate Defendant Herschel (*Id.*, at ¶¶ 20–23).  We will consider each instance in turn to determine whether Plaintiff has established a viable First Amendment retaliation claim.

Plaintiff's first alleged instance of speech was clearly made pursuant to his official duties as county solicitor.  Plaintiff alleges that he spoke to Defendant Arnold during her first term as commissioner for Susquehanna County regarding certain actions that could expose the county to liability.  According to Plaintiff, this speech was not part of his job duties as county solicitor because Susquehanna County's insurance company appointed outside counsel who "had the responsibility to control Arnold's actions relating to litigation against Susquehanna County."  (*Id.*, at ¶ 12).  Plaintiff's argument, however, does not comport with the statutorily-prescribed duties and responsibilities of county solicitors.  A county solicitor "shall do all and every professional act *and render legal advice* incident to the office which may be required of the solicitor by the commissioners."  16 P.S. § 902 (emphasis added).  It is also no matter that another attorney was involved in the litigation, as a county solicitor must "defend all actions or suits brought against the county."  *Id.*  Here, Plaintiff only goes as far as conceding that his speech in this instance "*potentially* could be construed as legal advice," (Doc. 1, at ¶ 13) (emphasis added), but this argument strains credibility.  Plaintiff counseled

Defendant Arnold concerning conduct that could expose the county to liability. This is the textbook definition of legal advice, and Plaintiff's principal job as county solicitor was to render legal advice to county commissioners such as Defendant Arnold. Therefore, we necessarily find that this first instance of speech was clearly made "pursuant to his official duties."

The second alleged instance of speech arose in the context of Susquehanna County's defense of litigation related to the undisclosed conduct of Defendant Arnold. According to Plaintiff, he "and other employees" were asked to lie in documents prepared by outside counsel in response to an EEOC complaint, and Plaintiff refused. (*Id.*, at ¶¶ 17–19). Plaintiff avers in this instance he "was not acting in his role as solicitor," but rather "he was acting in a role as witness." (Doc. 26, at 17) (emphasis omitted). This is, admittedly, a closer call then the first alleged instance of speech. But key pieces of evidence gleaned from Plaintiff's allegations convinces us that Plaintiff's alleged refusal to lie was also made pursuant to his official duties. Though Plaintiff in his briefing argues that he was acting as a witness when he allegedly refused to lie, that allegation does not appear in his complaint. Rather, the complaint describes a situation that clearly reflects Plaintiff acting pursuant to his role as county solicitor. Again, even if outside counsel was primarily responsible for the litigation, Plaintiff still had a statutory duty to "defend all actions or suits brought against the county." 16 P.S. § 902.

Plaintiff also appears to have been actively involved in the litigation: he relayed facts to outside counsel concerning the EEOC complaint against Susquehanna County and Defendant Arnold and he reviewed the responses and draft statements to the EEOC complaint before they were submitted.  (Doc. 1, at ¶¶ 15–16).  Though "speech may be protected even if it concerns information related to or learned through public employment, [] an employee does not speak as a citizen if the mode and manner of his speech were possible only as an ordinary corollary to his position as a government employee."  *De Ritas v. McGarrigle*, 861F.3d 444, 454 (3d Cir. 2017) (quoting *Lane v. Franks*, 573 U.S. 228, 236 (2014) (internal quotations and citations omitted).

In *De Ritas*, the Third Circuit held that though ordinary citizens may offer in-court testimony or report misconduct to government officials, citizens do not make "idle chatter [with attorneys and judges] while waiting for court to begin or end as a public defender representing a client may do."  *Id.*  Likewise, in *Fraternal Order of Police, Lodge 1 v. City of Camden*, 842 F.3d 231 (3d Cir. 2016), the Third Circuit held that citizens do not complete internal police counseling forms as part of the police disciplinary process—only police officers acting as public employees do.  *Fraternal Order of Police, Lodge 1*, 842 F.3d at 244.  Here, while citizens may be involved as witnesses in legal proceedings for employment discrimination, ordinary citizens do not review draft responses to EEOC

complaints or discuss ongoing litigation with a county's outside attorney. Therefore, we conclude that this instance of speech "owe[d] its existence to [Plaintiff's] professional responsibilities," and therefore restriction of that speech "[did] not infringe any liberties the employee might have enjoyed as a private citizen." *Gorum v. Sessoms*, 561 F.3d 179, 185 (3d Cir. 2009) (quoting *Garcetti*, 547 U.S. at 421); *see also Santiago v. New York & New Jersey Port Auth.*, 687 F. App'x 146, 151 (3d Cir. 2017) ("Santiago did not speak to the public, but directed her speech up the chain of command. While the audience is certainly not a dispositive factor, it is an important one.").

Even if we credited Plaintiff's arguments that this second instance of speech was not made pursuant to his official duties, we would still find that Plaintiff's allegations regarding his refusal to lie insufficient for two other reasons. First, Plaintiff's complaint is devoid of any allegation that this speech "involved a matter of public concern," as is required to state a claim for First Amendment retaliation. *See Borden v. Sch. Dist. of the Twp. of East Brunswick*, 523 F.3d 153, 169–70 (3d Cir. 2008) ("The content of speech on a matter of public concern generally addresses a social or political concern of the community. . . . [T]he content of these types of speech goes to the core of the First Amendment because it adds to the debate on matters of public importance."). Second, Plaintiff fails to sufficiently plead that his speech was "a substantial factor in the alleged retaliatory action."

*Hill*, 455 F.3d at 241.  Plaintiff's only allegations that relate to causation are that his speech "infuriated [Defendant] Arnold" and that Defendant Arnold "vowed to get even with Mr. Giangrieco for the speech in which he had engaged."  (Doc. 1, at ¶¶ 19, 30).  These allegations, however, amount to "naked assertion[s] devoid of any further factual enhancement," and are precisely the kinds of allegations that are "not entitled to the assumption of truth" for purposes of resolving a 12(b)(6) motion to dismiss.  *Iqbal*, 556 U.S. at 678–79 (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

Finally, the third alleged instance of speech arose during Plaintiff's participation in an election board hearing concerning Defendant Herschel's campaign finance statements.  (Doc. 1, at ¶ 22).  Plaintiff, however, concedes that any speech made in this context was pursuant to his official duties.  (Doc. 26, at 17) ("Concerning the allegations in the Complaint regarding Mr. Giangrieco's involvement with Herschel's improper campaign finance filings, we agree that Mr. Giangrieco's involvement was in his role as solicitor.").  Therefore, we need not consider this speech in determining whether the complaint states a claim for First Amendment retaliation.

Because we find that none of Plaintiff's alleged speech was protected by the First Amendment, we will dismiss Count I against all Defendants.

**B.     Count II – Whistleblower Retaliation**

Count II seeks to state a claim for unlawful retaliation under the Pennsylvania Whistleblower Law (the "PWL").  The PWL provides that "[n]o employer may discharge, threaten or otherwise discriminate or retaliate against an employee . . . because the employee . . . makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a pubic body or an instance of waste by another other employer . . . ."  43 P.S. § 1423(a) (2014).

To state a claim for PWL retaliation, a plaintiff "must allege that prior to discharge, he made a good faith report of his employer's waste or wrongdoing to the appropriate authorities, and was discharged in reprisal for that report." *Jakomas v. McFalls*, 229 F. Supp. 2d 412, 421 (W.D. Pa. 2002) (citing *Lutz v. Springettsbury Township*, 667 A.2d 251 (Pa. Commw. Ct. 1995)).  The "good faith report" must "specify how an employer is guilty of wrongdoing or waste."  *Sukenik v. Twp. of Elizabeth*, 131 A.3d 550, 555 (Pa. Commw. Ct. 2016) (citing *Gray v. Hafer*, 651 A.2d 221, 225 (Pa. Commw. Ct. 1994), *aff'd*, 669 A.2d 335 (Pa. 1995)). This report also "must provide information that is sufficient to identify the law allegedly violated" and "reports of vague or subjectively wrong conduct are not considered wrongdoing under the [PWL]."  *Id.* at 555–56 (citing *Riggio v. Burns*, 711 A.2d 497, 501 (Pa. Super. Ct. 1998)).  The PWL defines "wrongdoing" as "[a]

violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer," while "waste" is defined as "[a]n employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources."  43 P.S. § 1422.

Plaintiff here alleges that he reported "wrongdoing" and "waste" to Defendant Arnold—and therefore also to Defendant Susquehanna County—when he counseled her regarding actions that could (and allegedly did) expose the county to liability, as well as when he allegedly refused to lie in documents responsive to an EEOC complaint. (Doc. 26, at 16–17).  Defendants argue that these allegations are insufficient because they do not establish that Plaintiff made a "good faith report" of wrongdoing.  (Doc. 20, at 17–20).  We agree with Defendants.

First, Plaintiff has not established that he indeed made any "good faith report" of wrongdoing.  Plaintiff alleges that he "spoke to [Defendant Arnold] repeatedly about actions she was taking that were not only contrary to Susquehanna policy, but potentially exposed Susquehanna County to liability . . . ." (Doc. 1, at ¶ 11).  He also alleges that he told the attorney for Susquehanna County's insurance company that the documents prepared in response to an EEOC complaint were false and that he would not lie on his statement to the EEOC.  (*Id.*,

at ¶¶ 16–18).  Neither of these allegations amount to a "good faith report" because Plaintiff fails to allege that those reports "specif[ied] how [his] employer [was] guilty of wrongdoing or waste."  *Sukenik*, 131 A.3d at 555.  Plaintiff's allegation that he counseled Defendant Arnold about actions that could expose the county to liability does not establish that Defendant Arnold *objectively* violated any law or policy.  *See Kimes v. Univ. of Scranton*, 126 F. Supp. 3d 477, 505 (M.D. Pa. 2015) ("The test is objective, not subjective; that is, it does not matter whether the plaintiff holds a belief, even if well-founded, that the conduct constitutes wrongdoing.  What is required under the statute is that the plaintiff prove there was an actual 'violation' . . . .").[3]  Likewise, even if the ensuing litigation did relate to the alleged wrongdoing Plaintiff discussed with Defendant Arnold, those conversations would still not amount to a "good faith report" that specified how Defendant Arnold objectively violated any law or rule, as mere allegations in a lawsuit are not evidence of actual wrongdoing.

---

[3]    Plaintiff asserts he has not pled specific details concerning this "report" because his conversations with Defendant Arnold "potentially could be construed as legal advice."  (Doc. 1, at ¶ 13).  However, that these conversations "potentially could be construed as legal advice" underscores the deficiency of his pleadings—either Plaintiff in those conversations was making a good faith report of wrongdoing such that he was acting as a whistleblower, or he was acting as the attorney for Susquehanna County and Defendant Arnold; both cannot be true simultaneously.  As discussed above, the fact that Plaintiff's job was specifically to advise Susquehanna County and its commissioners on legal matters convinces us that these conversations with Defendant Arnold about potential litigation did not amount to whistleblowing as defined by the PWL.

Plaintiff's other allegation—that he refused to lie—similarly does not amount to a "good faith report" of wrongdoing under the PWL.  Plaintiff does not allege that he made any report to Susquehanna County or an appropriate authority—he only alleges that he told the attorney hired by county's insurance company that the documents "*prepared*" in response to an EEOC complaint were false and inaccurate, and that he would not change his previously-drafted statement.  (Doc. 1, at ¶15) (emphasis added).  Again, there is no allegation that Plaintiff made any kind of report that "specif[ied] how [the] employer is guilty of wrongdoing or waste."  *Sukenik*, 131 A.3d at 555.  Moreover, the allegation that Plaintiff and others "refused to lie or to change his accurate statement" indicates that, as-pled, it is plausible that no false documents were ever submitted on behalf of Susquehanna County.  (Doc. 1, at ¶ 18); see *Anderson v. Bd. of Sch. Directors of Millcreek Twp. Sch. Dist.*, 574 F.  App'x 169, 173–74 (3d Cir. 2014) ("Anderson did not convey that Maynard violated any law, ordinance, regulation, or code of conduct—or, indeed, that Maynard had done anything wrong at all.  She merely expressed her concern that Maynard might engage in certain conduct in the future.  Accordingly, Anderson's statements do not constitute a report of wrongdoing . . . .").  In other words, Plaintiff's allegations that he made a good faith report of wrongdoing or waste do not "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

Second, even if we found that Plaintiff did make a good faith report of wrongdoing or waste, Plaintiff's complaint nonetheless insufficiently pleads that his report(s) were causally connected to his termination.  According to the complaint, Plaintiff's conversations with Defendant Arnold and the preparation of the response to the EEOC complaint both took place during Defendant Arnold's first term.  Although the complaint does not specify the exact timeframe, the Individual Defendants attached to their brief two docket reports for employment discrimination lawsuits against Defendants Arnold and Susquehanna County (and others) filed in the U.S. District Court for the Middle District of Pennsylvania in November 2017.  (Doc. 20-2).  Plaintiff does not dispute that these actions are related to Defendant Arnold's alleged wrongdoing and the EEOC complaint and subsequent litigation alleged in his complaint.  But if we were to construe these lawsuits as the same ones that formed the basis for the conduct described in the complaint, then each of the "reports" alleged by Plaintiff must have occurred well before November 2017.

Courts in the Third Circuit usually look to two factors in determining whether a complaint states a causal connection to retaliatory action: "(1) the temporal proximity between the protected activity and the alleged discrimination and (2) the existence of a pattern of antagonism in the intervening period." *Hussein v. UPMC Mercy Hosp.*, 466 Fed.Appx. 108, 112 (3d Cir. 2012).  Here, we

19

find neither any temporal proximity between Plaintiff's "reports" nor any pattern of antagonism in the intervening period prior to his termination.  If we assume that Plaintiff reported the alleged wrongdoing sometime prior to November 2017—and Plaintiff has given us no reason not to rely on such an assumption—then almost two and a half years passed in between his reports and his termination.  That is far too long to infer based on temporal proximity alone that Defendants retaliated against Plaintiff.  *See, e.g.*, *McCann v. Astrue*, 293 Fed.Appx. 848, 852 (3d Cir. 2008) (holding that five months creates no inference of retaliation); *Urey v. Grove City College*, 94 Fed.Appx. 79, 81 (3d Cir. 2004) (finding that four months generally creates no inference); *Gaston v. U.S. Postal Service*, 319 Fed.Appx. 155, 159 (3d Cir. 2009).  Plaintiff also does not allege a single instance of antagonism during those intervening two and a half years; he only alleges that his "reports" "infuriated [Defendant] Arnold" and that Defendant Arnold "vowed to get even with Mr. Giangrieco for the speech in which he had engaged."  (Doc. 1, at ¶¶ 19, 30).  We have already concluded that these allegations are "not entitled to the assumption of truth" for purposes of resolving a 12(b)(6) motion to dismiss.  *Iqbal*, 556 U.S. at 678–79.  Accordingly, Plaintiff has failed to state a claim for retaliation under the PWL, and we will dismiss Count II against all Defendants.

### C.      Count III – Gender Discrimination

Plaintiff announced in his briefs in opposition to the Motions to Dismiss that he is "withdrawing" his claim for gender discrimination in violation of the Fourteenth Amendment's Equal Protection Clause.  (Doc. 26, at 20; Doc. 27, at 10).  Accordingly, we will dismiss Count III as to all Defendants.

### D.      Count IV – Wrongful Termination in Violation of Public Policy

Finally, Count IV of Plaintiff's complaint seeks to state a claim for wrongful termination in violation of public policy.  Plaintiff avers that he was terminated from his role as solicitor for Susquehanna County for "his refusal to lie or to give a false statement in official documents," in contravention of Pennsylvania public policy that "all persons [must] give only truthful and non-misleading statements in litigation or to administrative agencies such as the EEOC."  (Doc. 1, at ¶¶ 61–62).

Generally, under Pennsylvania law, a plaintiff has no cause of action arising from the termination of an at-will employment relationship unless that termination violates public policy.  *See Donahue v. Fed. Exp. Corp.*, 753 A.2d 238, 244 (Pa. Super. Ct. 2000).  For example, "an employer (1) cannot require an employee to commit a crime, (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when specially prohibited from doing so by statute."  *Spierling v. First Am. Home Health Servs., Inc.*, 737

A.2d 1250, 1252 (Pa. Super. Ct. 1999) (quoting *Hennessy v. Santiago*, 708 A.2d 1269, 1273 (Pa. Super. Ct. 1998).  While in certain cases a court does not need a specific legislative pronouncement to find that a particular employment practice violates public policy, a court's power to announce public policy is nonetheless limited: "[p]ublic policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest." *Donahue*, 753 A.2d at 244 (quoting *Shick v. Shirey*, 716 A.2d 1231, 1237 (Pa. 1998)).  Based on our review of the pleadings and briefing in the light most favorable to Plaintiff, we will dismiss Count IV against all three Defendants for at least three reasons.

First, Plaintiff cannot state a claim for wrongful termination in violation of public policy against Defendant Susquehanna County because the county is immune from such claims.  *See* 42 Pa.C.S.A. § 8542; *Snavely v. Arnold*, No. 1:08-cv-2165, 2009 WL 1743737, at *6, n.8 (M.D. Pa. June 18, 2009) ("Wrongful discharge is not one of the articulated exceptions [of Section 8542 of the Pennsylvania State Tort Claims Act].") (citing *Lancie v. Giles*, 572 A.2d 827, 830 (Pa. Commw. Ct. 1990)).  Plaintiff appears to concede that Defendant Susquehanna County is indeed entitled to immunity here.  (Doc. 27, at 11) ("[S]ome cases have held that the PSTCA bars such a claim against a county, but

does not bar such a claim as against the individual actors.").  Accordingly, we will dismiss Count IV at least as to Defendant Susquehanna County.

Second, as stated above, "the public policy exception to the at-will employment doctrine under Pennsylvania law is quite narrow[.]"  *Bell v. Lackawanna Cty.*, 892 F. Supp. 2d 647, 691 (M.D. Pa. 2012).  "While a federal court must be sensitive to the doctrinal trends of the jurisdiction whose law it applies, it is beyond the authority of a federal court . . . to create entirely new causes of action."  *Wolk v. Saks Fifth Ave. Inc.*, 728 F.2d 221, 223 (3d Cir. 1984).  Here, Plaintiff has pled that Defendants' alleged conduct violates certain generalized principles of public policy, including a general prohibition against attorneys engaging in dishonest conduct.  (Doc. 1, at ¶¶ 62–65).  In Plaintiff's reply brief to the Individual Defendants' motion to dismiss, he also lists certain federal and state statutes that were potentially implicated by Defendants' conduct, including perjury in violation of 18 P.S. § 4902.  (Doc. 26, at 19).  But at this stage we must focus solely on the sufficiency of the pleadings.  *See Latraverse v. Kia Motors of Am., Inc.*, No. 10-cv-6133, 2011 WL 3273150, at *5, n.6 (D.N.J. July 27, 2011) ("[T]he Court cannot consider the arguments in the Reply Brief in construing the Complaint.") (citing *In re Burlington Coat Factory Sec.'s Litig.*, 114 F.3d 1410, 1425 (3d Cir. 1997)).  As pled, this claim stems merely "from general considerations of supposed public interest" rather than "by reference to the laws

and legal precedents" of Pennsylvania.  *Donahue*, 753 A.2d at 244.  Therefore, the claim is insufficiently pled.

Third and finally, even if Plaintiff could overcome this pleading deficiency, we would nonetheless decline to exercise supplemental jurisdiction over this remaining claim against the Individual Defendants.  When a District Court has dismissed all claims over which it has original jurisdiction, the court has the discretion to decline to exercise supplemental jurisdiction over any remaining state law claims.  28 U.S.C. § 1367(c)(3); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Bright v. Westmoreland County*, 380 F.3d 729, 751 (3rd Cir. 2004) ("[A]bsent extraordinary circumstances, where the federal causes of action are dismissed the district court should ordinarily refrain from exercising pendent jurisdiction [over the state law claims].") (internal citations and quotations omitted).  In exercising its discretion, a court should consider factors such as of judicial economy, convenience and fairness to the parties, and principles of comity.  *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).

Here, Defendant Susquehanna County requested that if the federal causes of action were dismissed, then the Court should decline to exercise supplemental jurisdiction over any remaining state law claims.  (Doc. 22, at 14).  Plaintiff in his

reply brief (Doc. 27), however, does not raise a single argument as to why the principles of judicial economy, convenience, fairness, and/or comity should persuade us to exercise supplemental jurisdiction here.  Seeing no compelling interest served by adjudicating this lone remaining state law claim against the Individual Defendants, we would dismiss Count IV regardless of the pleading's sufficiency.  *See Tryko Holdings, LLC v. City of Harrisburg*, 429 F. Supp. 3d 12, 24 (M.D. Pa. 2019) ("Judicial economy dictates that there is no significant interest served by adjudicating these claims in federal court at this time and, because the Court lacks an independent basis to retain jurisdiction over the remaining state-law claims, we shall dismiss Plaintiff's Complaint in its entirety.").

## IV.   CONCLUSION

For the foregoing reasons, we shall grant the Motions to Dismiss and deny the Individual Defendants' Motion for More Definitive Statement.  A separate order shall issue in accordance with this ruling.